IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY JEROME ELDER,<br><br>      Petitioner,<br><br> vs.<br><br>A. HEDGPETH, Warden, Salinas Valley<br>State Prison,<br><br>      Respondent. | Case No: 2:10-cv-00007-JKS<br><br><br>MEMORANDUM DECISION |

Petitioner, Corey Jerome Elder, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Elder is currently in the custody of the California Department of Corrections, incarcerated at the Salinas Valley State Prison in Salinas, California. Respondent has filed an Answer, and Elder has filed a Traverse.

PROCEDURAL HISTORY

In March of 2005, a Solano County jury found Elder guilty of simple assault, hit and run without injury, driving the wrong way on a divided highway causing injury, and evading a police officer causing injury. The trial court sentenced defendant to a total prison term of 46 years to life. The facts are well known to the parties and are not repeated here, except to the extent necessary to inform the discussion.

On October 12, 2007, the California Court of Appeal, First Appellate District, affirmed Elder's conviction in a reasoned, unpublished decision.[1]  The Court of Appeal then remanded the case to the trial court to re-sentence Elder; he was re-sentenced to 46 years in prison.

After his re-sentencing, Elder filed a habeas corpus petition in the California Supreme Court, which denied the petition on November 19, 2009.  On January 4, 2010, Elder timely filed his Petition for Habeas Corpus in this Court.  In his Petition, Elder raises seven grounds for relief:

1.      Ineffective assistance of appellate counsel;

2.      The guilty verdict as to counts three and four was not supported by the evidence;

3.      Evidence was insufficient to establish guilt beyond a reasonable doubt with respect to motive;

4.      The trial court erred in declining to instruct the jury on self-defense in violation of Elder's rights under the due process clause, the right to a trial by jury and the confrontation clause;

5.      Ineffective assistance of trial counsel;

6.      The prosecution knowingly used perjured testimony to obtain a conviction; and,

7.      The trial court erred by denying Elder's motion for a new trial.

Respondent does not contend that Elder's petition is untimely or that any of his claims are procedurally barred.

---

[1]  *People v. Elder*, 2007 WL 2966836 (Cal. App. 2007).

2

<u>STANDARD OF REVIEW</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[3]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[4]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[2] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[3] *Williams*, 529 U.S. at 412.

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

be objectively unreasonable, not just incorrect or erroneous.[6]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[7]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[8]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[9]  Because state-court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[10]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas

---

[6] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[8] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[10] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[11]

In applying this standard, this Court reviews the last reasoned decision by the state court.[12]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[13]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[14]

Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the Court of Appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the Court of Appeal's denial in the California Supreme Court.[15]  This is considered as the functional equivalent of the appeal process.[16]  Under AEDPA,

---

[11] *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[13] *Ylst*, 501 U.S. at 802-03.

[14] *Harrington*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[15] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

[16] *Id.* at 222.

the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[17]  This presumption applies to state trial courts and appellate courts alike.[18]

A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."[19]  When there is no reasoned state court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[20]  "The presumption may be overcome when there is reason to think that some other explanation for the state court's decision is more likely."[21]  Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[22]  In so doing, because it is not clear that it did not so do, the Court presumes that the state court decision rested on federal grounds,[23] giving the presumed decision

---

[17] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[18] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[19] *Harrington*, 131 S. Ct. at 785.

[20] *Id.* at 784-85.

[21] *Id.* at 785.

[22] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[23] *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991).

the same deference as a reasoned decision.[24]  The scope of this review is for clear error of the

state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of
> controlling federal law.  Only by that examination may we determine whether the
> state court's decision was objectively reasonable.[25]

"[A]lthough we independently review the record, we still defer to the state court's ultimate

decision."[26]

DISCUSSION

As noted above, Elder raises seven grounds for relief.  For purposes of clarity and

continuity, this Court will group similar grounds together.

Sufficiency of the Evidence (Ground 2)

In his second ground, Elder claims that counts 3 (driving the wrong way in a divided

highway causing injury (Cal. Vehicle Code, § 21651(b)) and 4 (evading a police officer causing

injury (Cal. Vehicle Code, § 2800.3)) were unsupported by the evidence.  Elder claims that he

had no choice but to commit a violation of Cal. Vehicle Code, § 21651(b)[27] as charged in count

---

[24] *Richter*, 562 U.S. at ____, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[25] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[26] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[27]  Cal. Vehicle Code, § 21651, in relevant part, reads:
(b) It is unlawful to drive any vehicle upon a highway, except to the right of an intermittent barrier or a dividing section which separates two or more opposing lanes of traffic. Except as otherwise provided in subdivision (c), a violation of this subdivision is

7

three, because he feared for his life at the hands of Officer Fullen and had to escape in order to save his life.  Elder also claims that there was insufficient evidence that he violated Cal. Vehicle Code, § 2800.3[28] as charged in count four, since he claims he was not being pursued by Officer Fullen at the time he crashed into the victim.  Elder reasons that since he was not being pursued by an officer at the time of his accident, the injuries suffered by the victim were not proximately caused by his evasion of law enforcement.

   As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to

---

a misdemeanor.

(c) Any willful violation of subdivision (b) which results in injury to, or death of, a person shall be punished by imprisonment in the state prison, or imprisonment in a county jail for a period of not more than six months.

[28]  Cal. Vehicle Code, § 2800.3, in relevant part, reads:
(a) Whenever willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes serious bodily injury to any person, the person driving the pursued vehicle, upon conviction, shall be punished by imprisonment in the state prison for three, five, or seven years, by imprisonment in a county jail for not more than one year, or by a fine of not less than two thousand dollars ($2,000) nor more than ten thousand dollars ($10,000), or by both that fine and imprisonment.

Cal. Vehicle Code, § 2800.1 in relevant part, reads:
(a) Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist:
(1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.
(2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.
(3) The peace officer's motor vehicle is distinctively marked.
(4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform.

the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[29]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[30]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[31]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[32]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[33]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[34]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged

---

[29] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[30] *Jackson*, 443 U.S. at 318-19.

[31] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[32] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[33] *Jackson*, 443 U.S. at 324 n. 16.

[34] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

conviction, binds a federal court sitting in habeas corpus."[35]  A determination of state law by a

state intermediate appellate court is also binding in a federal habeas action.[36]  This is especially

true where the highest court in the state has denied review of the lower court's decision.[37]

"[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited

to whether the error 'so infected the trial with unfairness as to make the resulting conviction a

denial of due process.'"[38]  "Federal courts hold no supervisory authority over state judicial

proceedings and may intervene only to correct wrongs of constitutional dimension."[39]  It is

through this lens that this Court must view an insufficiency of the evidence claim.

In his Petition, Elder concedes that he committed the elements of the offense charged in

count three, but claims that his actions were excused by the circumstances.[40]  This argument,

when framed as a "sufficiency of the evidence" claim is self defeating; Elder himself essentially

concedes that a "rational trier of fact could have found the essential elements of the crime

---

[35] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[36] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[37] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[38] *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[39] *Sanchez-Llamas v. Oregon,* 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[40]  Petition, pp. 17-18.

beyond a reasonable doubt" but offers an excuse for his actions.[41]   While it is conceivable, albeit unlikely, that a jury may have chosen to believe Elder's excuse for his behavior, it is clear from the record that the jury in this case did not.   This Court must defer to that decision.

With respect to the fourth count, there was sufficient evidence to support Elder's conviction for evading a police officer causing injury.   Elder claims that since Officer Fullen was not actively pursuing him when Elder caused the car accident which injured the victim, there was no evidence that the accident was proximately caused by his attempt to avoid a pursing officer. Elder's argument is without merit.   The language of Cal. Vehicle Code, §§ 2800.3 and 2800.1 does not require that the officer be pursing the defendant at the time the accident occurs.   The statutes only require that the injuries be proximately caused by the defendant's attempt to elude an officer who pursues him or her.

When Elder initially rammed Officer Fullen's police cruiser and then sped off, Officer Fullen pursued him; however, Officer Fullen discontinued his pursuit after Elder drove up the off-ramp and entered the freeway in the wrong direction.   A reasonable jury could, and did, find that Elder's attempt to evade Officer Fullen's initial, albeit brief, pursuit proximately caused the victim's injuries, even though Officer Fullen terminated his chase.   Phrased differently, a jury could have found that Elder's decision to drive the wrong way down a freeway in order to evade a pursuing officer caused the victim's injuries, even if the officer (wisely) decided to terminate his pursuit.

---

[41] *Jackson*, 443 U.S. at 319 (emphasis in the original); *see McDaniel*, 130 S. Ct. at 673 (reaffirming this standard).

This Court also notes that § 2800.3 also prohibits willful flight which proximately causes serious bodily injury to any person.[42]  Elder admits that he willfully fled from Officer Fullen, but that he did so in order to save his own life.  Thus, a reasonable jury could have also convicted Elder of a violation of § 2800.3 even if Officer Fullen had never given chase, since Elder's willful flight from Officer Fullen's custody proximately caused the victim's injuries.  Elder is not entitled to relief on his second ground.

Evidence Regarding Motive (Ground 3)

In his third ground, Elder claims that the evidence was insufficient to establish guilt beyond a reasonable doubt with respect to motive.  Specifically, Elder claims that the trial court should have suppressed a statement he made to Officer Fullen, who visited Elder in the hospital.  Elder claims that the statement was coerced since he was confused and in pain.  Oddly, Elder also claims that he was heavily medicated during the interview and had no recollection of it whatsoever.  Elder asserts that without his statement, the prosecution did not have any evidence regarding why Elder fled from Officer Fullen.

In order to show that his or her confession or statement to law enforcement was unconstitutionally admitted into evidence, a criminal defendant must show some sort of coercive police activity.[43]  A statement will be deemed involuntary "if the government obtained [it] by physical or psychological coercion or by improper inducement so that the suspect's will was

---

[42] "(a) Whenever willful flight *or* attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes serious bodily injury to any person, the person driving the pursued vehicle, upon conviction, shall be punished by imprisonment in the state prison for three, five, or seven years . . ." (emphasis added).

[43] *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

overborne."[44]   In this case, Elder does not assert any facts that would allow this Court to conclude that Officer Fullen took any coercive action to elicit Elder's statement.  Rather, Elder asserts that the fact he was medicated during the interview, standing alone, made his statement involuntary.  However, the Ninth Circuit has held that statements given by criminal defendants who are in pain or taking medication are voluntary, absent coercive police conduct.[45]

Officer Fullen informed Elder of his *Miranda* rights, obtained a waiver and conducted the interview.[46]  Officer Fullen stated that Elder did not appear to be under the influence of medication when he was interviewed; he clearly and coherently answered questions and the answers were tape recorded.[47]  Furthermore, hospital records do not indicate what medications Elder was taking, their effects, or whether he was medicated at the time of the interview.[48]  Because he has failed to show that his statement was the result of coercive police action, Elder is not entitled to relief on his third ground.

<u>Self-Defense Instruction (Ground 4)</u>

---

[44]  *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997) (internal citations and quotations omitted).

[45]  *See*, *e.g.*, *United States v. George*, 987 F.2d 1428, 1430-1431 (9th Cir. 1993) (defendant's statements to police were voluntary, even though defendant was in the hospital suffering from apparent drug overdose at time of interview); *United States v. Kelley*, 953 F.2d 562, 564-566 (9th Cir. 1992) (no police coercion, even though defendant told officers he was on the verge of heroin withdrawal, and he began suffering effects of withdrawal, at time of interview) disapproved of on other grounds by *United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997) ; *United States v. Lewis*, 833 F.2d 1380, 1384 (9th Cir. 1987) (holding statement voluntary despite fact that defendant had recently returned from surgery on her shoulder, was in pain and had recently received a general anesthetic).

[46]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

[47]  RT 132-134.

[48]  RT 118, 144.

In his fourth ground Elder claims the trial court violated his due process rights, the right to a trial by jury and the confrontation clause by failing to give his requested instruction on self-defense. After Officer Fullen pulled Elder over, he learned that Elder was an unlicensed driver and on parole. He wrote up a citation and called for a tow truck to remove the car, and at this point Elder exited his car and appeared agitated. According to Elder, Officer Fullen drew his sidearm, pointed it at Elder, and ordered him back to his car. Elder claims that he returned to his car but that he thought that Officer Fullen was still going to shoot him, thus he was forced to flee the scene and drive the wrong way down the freeway. At trial, Elder testified that he was acting in self-defense against Officer Fullen's use of excessive force, and he now claims that the trial court erred by declining to give the self-defense instruction offered by the defense. The only evidence that Officer Fullen drew his weapon was Elder's testimony—the police report did not state that Officer Fullen pulled his gun.

The Ninth Circuit has held that due process requires trial courts to instruct the jury on a defense theory if it is "legally sound and evidence in the case makes it applicable."[49] In California, "[i]t is lawful for a person who is being assaulted to defend himself from attack if, as a reasonable person, he has grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so, that person may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent."[50] However, "It is well established that the ordinary self-defense doctrine . . . may not be invoked by a

---

[49] *Beardslee v. Woodford*, 358 F.3d 560, 577-78 (9th Cir. 2004).

[50] CALJIC No. 5.30 (now Cal. Crim. No. 3470).

14

defendant who, through his own wrongful conduct . . . has created circumstances under which his adversary's attack or pursuit is legally justified.[51]  Finally, a trial court needs to give a requested instruction concerning a defense only if there is substantial evidence to support the defense.[52]

Elder's argument fails for two reasons.  First of all, Elder did not present substantial evidence to support his theory of self-defense.  The only evidence that Officer Fullen drew his sidearm was Elder's testimony—Officer Fullen testified that he simply instructed Elder to get back into his car.  Furthermore, Elder later admitted to Officer Fullen that he fled because he did not want to return to jail.  Even if the trial court found Elder's testimony persuasive, Elder did not present any evidence that the "imminent peril" of being shot continued to exist once he complied with Officer Fullen's instructions to get back into his vehicle.[53]  Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not support a claim of self-defense.[54]  In this case, Elder did not present substantial evidence that Officer Fullen drew his weapon, let alone evidence that his fear of imminent danger persisted once he complied with Officer Fullen's directive.  Elder did not present substantial evidence to support his claim of self-defense.[55]

---

[51]  *In re Christian S.*, 872 P.2d 574, 576 n.1 (Cal. 1994).

[52]  *Id.* at 583.

[53]  *Id.*

[54]  *Id.*

[55]  *Id.*

Elder's claim also fails because Elder's conduct of exiting the vehicle in an agitated

manner and without being instructed to do so by Officer Fullen, created a situation in which

Officer Fullen would have been justified in using his weapon to enforce his directive.  In

*Robinson v. Solano County*, the Ninth Circuit held that "pointing a gun to the head of an

apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment,

especially where the individual poses no particular danger."[56]  However, "[t]he fact that a suspect

does not threaten the officer does not shield him from the use of force," and courts must "make

allowances for the split-second judgments officers are required to make in tense, uncertain, and

rapidly evolving situations."[57]  In this case, Officer Fullen was alone, waiting for backup when

Elder exited his vehicle and approached Fullen in an agitated manner.  Any force used against

Elder was minimal; if it even occurred, it was a momentary threat of deadly force.  A

determination of force "requires careful attention to the facts and circumstances of each

particular case."[58]  Even giving full credit to Elder's testimony, the facts establish only that

Officer Fullen drew his gun and pointed it at Elder until he returned to his vehicle and Fullen

ensured he was not a safety threat.  Because Elder's actions would have justified Officer Fullen's

response, he was not entitled to a self-defense instruction.

Although the trial court declined to give the self-defense instruction proposed by Elder, it

did instruct the jury on the defense of necessity pursuant to CALJIC No. 4.43.  Under CALJIC

No. 4.43 the jury is instructed that a defendant is not guilty of a crime when he engages in an act,

---

[56]  278 F.3d 1007, 1015 (9th Cir. 2002).

[57]  *Brooks v. City of Seattle*, 599 F.3d 1018, 1025 (9th Cir. 2010).

[58]  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

otherwise criminal, through necessity.[59]  This gave Elder a full opportunity to present his defense

theory—that he had to flee to avoid being shot.  Substantive, the defenses of necessity and

self-defense are similar: both excuse otherwise criminal behavior if a reasonable person would

have felt compelled to act in the proscribed manner in order to prevent harm which he or she did

not create.[60]  Given this similarity, it is highly unlikely that the jury would have acquitted Elder

under a theory of self-defense, when it did not excuse his behavior under the theory of necessity.

Elder cannot show prejudice.[61]  Elder has not articulated why CALJIC No. 4.43 was insufficient

and is not entitled to relief on his fourth ground.

Prosecution Used Perjured Testimony (Ground 6)

In his sixth ground, Elder claims the prosecution used perjured testimony in order to

obtain a conviction.  Specifically, Elder claims that during an administrative hearing Officer

Fullen stated that he was not in pursuit of Elder as Elder sped off, but apparently, during the trial,

---

[59]  CALJIC No. 4.43, in its entirety, reads:

A person is not guilty of a crime when [he] [she] engages in an act, otherwise criminal,
through necessity. The defendant has the burden of proving by a preponderance of the
evidence all of the facts necessary to establish the elements of this defense, namely:
1 The act charged as criminal was done to prevent a significant and imminent evil,
namely, [a threat of bodily harm to oneself or another person] [or] [ ];
2 There was no reasonable legal alternative to the commission of the act;
3 The reasonably foreseeable harm likely to be caused by the act was not
disproportionate to the harm avoided;
4 The defendant entertained a good-faith belief that [his] [her] act was necessary to
prevent the greater harm;
5 That belief was objectively reasonable under all the circumstances; [and]
6 The defendant did not substantially contribute to the creation of the emergency[.] [; and
7 The defendant reported to the proper authorities immediately after attaining a position
of safety from the peril.]

[60]  *Compare* CALJIC No. 5.30 to CALJIC No. 4.43 (now Cal. Crim. No. 3403).

[61]  *See Boyde v. California,* 494 U.S. 370, 380 (1990).

Officer Fullen stated that he was pursuing Elder as he sped off.  Accordingly, Elder reasons that since Officer Fullen lied, the prosecution was under a duty to elicit the truth.[62]

"[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[63] There is no allegation, let alone any evidence, that the prosecutor in this case *knowingly* used false or perjured testimony, the essential elements of prosecutorial misconduct.[64]  While Elder highlights several areas in which Officer Fullen's testimony appears to contradict his previous statements, that standing alone is insufficient.[65]  Nor does the fact that the prosecution presented a witness with contradictory stories of the details of the incident necessarily lead to the conclusion that the prosecutor knowingly introduced false or perjurious testimony, absent evidence that the prosecutor knew which story was false.[66]  To the extent that Fullen's testimony was inconsistent with previous statements, the prosecution was allowed to introduce his testimony to the jury, subject him to cross-examination, and allow them to make their own credibility determination.  Elder is not entitled to relief on his sixth ground.

---

[62]  Petition, p. 23.

[63]  *United States v. Agurs*, 427 U.S. 97, 103 (1976).

[64]  *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).

[65]  *See United States v. Zuno-Arce,* 44 F.3d 1420, 1423 (9th Cir. 1995) (refusing to reverse where defendant "offered no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies"); *United States v. Wolf,* 813 F.2d 970, 976-77 (9th Cir. 1987) (discrepancies in witness testimony, subject to cross-examination, did not constitute grounds for reversal).

[66]  *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1989).

<u>Trial Court Improperly Denied Elder's Motion for a New Trial (Ground 7)</u>

In his seventh ground, Elder contends that the trial court erred by denying his motion for a new trial.  To the extent that Elder raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.[67]  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[68]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[69]

"[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[70]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[71]  "Federal courts hold no supervisory authority

---

[67] *Swarthout v. Cooke*, 131 S. Ct. at 863 (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[68] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[69] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[70] *Swarthout v. Cooke*, 562 U.S. ___, ___, 131 S. Ct. 859, 863 (2011) (per curiam) (internal quotation marks and citations omitted).

[71] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[72] Elder's claim is beyond the purview of this Court.

Even if this Court were to reach the merits of Elder's claim, he would not be entitled to relief.  Elder contends that he was entitled to a new trial because:  1) the evidence in support of counts three and four was insufficient to support a conviction; 2) the prosecutor used Officer Fullen's perjured testimony; and, 3) the trial court erroneously declined to give Elder's proposed self-defense instruction to the jury.  As discussed above, none of these claims have any merit and are not sufficient to warrant a new trial.

Ineffective Assistance of Counsel (Grounds 1, 5)

In his first and fifth grounds, Elder claims that his Sixth Amendment right to the effective assistance of counsel was violated because his trial counsel and appellate counsel made several serious errors.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Elder must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[73]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[74]  Elder must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness,

---

[72] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[73] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[74] *Id.*

the result would have been different.[75]  An analysis that focuses "solely on mere outcome

determination, without attention to whether the result of the proceeding was fundamentally

unfair or unreliable, is defective."[76]

     *Strickland* and its progeny do not mandate that this Court act as a "Monday morning

quarterback" in reviewing tactical decisions.[77]  Indeed, the Supreme Court admonished in

*Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court, examining counsel's defense
> after it has proved unsuccessful, to conclude that a particular act or omission of
> counsel was unreasonable.  A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and to evaluate
> the conduct from counsel's perspective at the time.  Because of the difficulties
> inherent in making the evaluation, a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the presumption that, under the
> circumstances, the challenged action might be considered sound trial strategy.
> There are countless ways to provide effective assistance in any given case.  Even
> the best criminal defense attorneys would not defend a particular client in the
> same way.[78]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

---

[75] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[76] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[77] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[78] 466 U.S. at 689 (internal citations and quotation marks omitted).

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[79]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[80]

### Ineffective Assistance of Trial Counsel–Ground 5

Elder contends that his trial counsel was ineffective for: failing to challenge the constitutionality of his prior convictions; failing to call a mental health expert in Elder's defense; and failing to request a jury instruction on whether Officer Fullen was acting in the performance of his duties at that time of the incident.

After Elder was convicted, the trial court found true all the prior-conviction allegations in the information.  The evidence submitted by the prosecution was facially valid and Elder's counsel did not object to the evidence submitted by the prosecution to prove the prior convictions, which were guilty pleas.  Under California law, a criminal defendant may bring a motion to strike a prior conviction which will be used as an enhancement, on the ground that the prior conviction was obtained through a guilty plea that was not voluntary and knowing.[81]

---

[79] *Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1411, 1420 (2009).

[80] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[81]  *See People v. Allen*, 981 P.2d 525, 526 (Cal. 1999); *People v. Sumstine*, 687 P.2d 904, 907-10 (Cal. 1984).

Elder has not shown that his counsel had sufficient reason upon which to attack his guilty

plea convictions in September and December 1992.  Although Elder claims that he plead guilty

to the 1992 charges as a result of bad advice by his counsel at the time, he did not pursue timely

post-conviction relief from those convictions based on ineffective assistance of counsel in

connection with the plea agreement.  Accordingly, they could not have used his sentencing

proceedings in this case to invalidate his 1992 convictions.[82]  Trial counsel's decision not to

challenge Elder's prior convictions did not constitute ineffective assistance of counsel.

Next, Elder claims that defense counsel rendered ineffective assistance for failing to

call psychologist Dr. O. S. Glover as a witness at trial.  Glover testified at Elder's sentencing

hearing that Elder's criminal behavior was a result of his agitated depression caused by

events during his childhood.  Glover also testified that Elder suffered from post-traumatic stress

disorder as a result of his experience as a prisoner at Corcoran State Prison from 1993 to 1996,

which caused him to develop a panic disorder in response to Caucasian correctional officials.

Elder asserts that his trial counsel should have called Glover as a witness at trial to support the

defense that Elder's distorted perception of reality caused Elder to panic and flee when Officer

Fullen allegedly drew his gun and ordered him back to his car.

However, Glover also testified that any conclusions he drew regarding Elder's reaction to

Officer Fullen were premised on the fact that Officer Fullen drew his gun on Elder.  The only

evidence presented to Glover regarding whether Officer Fullen had drawn his weapon was

Elder's own statement–the police report was also silent as to whether Officer Fullen drew his

---

[82] *See Garcia v. Superior Court*, 928 P.2d 572, 529 (Cal. 1997) (defendant cannot
challenge constitutional validity of prior conviction used to enhance his sentence on ground of
ineffective assistance of counsel in prior proceeding).

gun.  Furthermore, Glover conceded that Elder did not mention a gun when he gave his

statement to Officer Fullen several days after the incident and, in fact, stated that he fled the

scene because he was on parole and he did not want to go back to jail.  Given that there was no

corroborating evidence that Officer Fullen drew his weapon and the fact that Elder stated that the

reason he fled was because he did not want to return to jail, counsel could have made a reasoned,

strategic decision not to call Glover to testify.  Such decisions are entitled to great deference.[83]

Elder is not entitled relief under this theory.

Finally, Elder claims that his trial counsel was ineffective for not requesting CALJIC No.

9.29 which would have allowed the jury to consider whether Officer Fullen was engaged in the

official performance of his duties when he conducted the traffic stop.  No evidence at trial

suggested that Officer Fullen was not on duty or not acting in his capacity as a police officer.

Counsel was not deficient for failing to make such a frivolous request.  Elder is not entitled to

relief on any theory presented in his fifth ground.

Ineffective Assistance of Appellate Counsel–Ground 1

In his first ground, Elder claims that his appellate counsel was ineffective for failing to

pursue several issues on appeal, which Elder claims were meritorious.  After reviewing his case

and the relevant case-law, Elder's appellate counsel chose to pursue a single theory of

appeal–that the trial court erred in imposing two five-year sentence enhancements for two prior

convictions because there was insufficient evidence that the charges were brought separately.

She informed Elder that she did not see any other appealable issues.

---

[83] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

Elder claims that his appellate counsel ignored the meritorious issues raised in the Petition in order to pursue a single claim "lacking in any real merit . . . ."[84]  This contention is undercut by the record–specifically, the Court of Appeal agreed that the trial court had committed a sentencing error and remanded for re-sentencing.  On the other hand, all of the claims in Elder's Petition are without merit.  The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[85]  Elder is not entitled to relief on his first ground.

---

[84]  Petition, p. 17.

[85]  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

<u>CONCLUSION AND ORDER</u>

Elder is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[86]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[87]

The Clerk of the Court is to enter judgment accordingly.

Dated: September 2, 2011

_____/s/ James K. Singleton, Jr._____
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[86]  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("to obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El,* 537 U.S. at 327).

[87]  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.